1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| NELSON GONZALEZ VILLA, on behalf of himself and all others similarly situated, | ) ) ) | Case No.: 5:12-CV-00318-LHK |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING |
| UNITED SITE SERVICES OF CALIFORNIA, INC., | ) ) ) | MOTION FOR CONDTIONAL CERTIFICATION OF COLLECTIVE |
| Defendant. | ) ) ) | ACTION; DENYING MOTION TO STRIKE |
| | ) ) | |

Plaintiff Nelson Gonzalez Villa ("Plaintiff"), on behalf of himself and others similarly

situated, moves the Court to certify a class for Plaintiff's state law wage and hour claims pursuant

to Federal Rule of Civil Procedure 23, and to conditionally certify a collective action for Plaintiff's

federal wage and hour claim pursuant to 29 U.S.C. § 216(b).  ECF No. 66 ("Mot.").  Defendant

United Site Services ("Defendant") filed an opposition on October 4, 2012.  ECF No. 72

("Opp'n").  Plaintiff filed a reply on October 18, 2012, ECF No. 92 ("Reply").[1]  In addition to his

certification motion, Plaintiff filed a motion to strike the declarations of 206 current United Site

Services Employees filed by Defendant in support of Defendant's opposition to certification on

October 22, 2012.  ECF No.  99 ("Mot. to Strike").  Defendant opposed this motion to strike on

---

[1] Both parties also filed separate evidentiary objections.  *See* ECF Nos.73-77, 82, 94-98.  However, Civil Local Rule 7-3 requires that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum."  Accordingly, the Court disregards all separately filed objections.

United States District Court
For the Northern District of California

1   October 26, 2012, ECF No. 116, and filed the declarations of 12 managers who gathered the

2   employee declarations.  ECF Nos. 102-115.  Plaintiff filed a reply on November 2, 2012.  ECF No.

3   118.  A hearing on these motions was held on November 8, 2012.  For the reasons set forth below,

4   the Court DENIES Plaintiff's motion to certify a class, GRANTS Plaintiff's motion for conditional

5   certification of a collective action, and DENIES Plaintiff's motion to strike.

6   **I.      BACKGROUND**

7          A.  Parties

8          Defendant rents and services portable toilets, restroom trailers, portable sinks, and

9   temporary fencing.  Opp'n at 1.  Defendant operates 16 locations in California, and has employed

10  approximately 1,000 people in the four years leading up to this lawsuit, about half of whom have

11  been service technicians and/or pickup and delivery drivers.  *Id.*  Many of the 16 locations were

12  previously separately owned businesses that United Site Services acquired as it expanded its

13  California customer base, including Acme & Sons Sanitation, a San Jose business, which United

14  Site Services acquired in 2005.  Decl. of Gaetano D'Anna, Exh. 15 to Decl. of Robert Camp in

15  support of Mot. ("Camp Decl.") at ¶ 2.

16         Plaintiff was employed by Acme & Sons Sanitation when it was acquired by United Site

17  Services in 2005, and was then hired by United Site Services as a service technician and pickup

18  and delivery driver.  *See* Second Amended Complaint ("SAC"), ECF No. 33-1, at ¶ 9.  He worked

19  for United Site Services from the time it acquired Acme in 2005 until he was laid off in September,

20  2011.  SAC at ¶ 13.  Plaintiff worked at the San Jose location.  *See* Decl. of Roxanne Briscoe, Exh.

21  14 to Camp Decl., at ¶ 5.

22         Service Technicians drive on pre-determined daily routes, where they service, sanitize, and

23  restock restroom units.  Mot. at 2.  Pickup and delivery drivers deliver and pick up portable

24  restroom, sink, and tank units at customer sites on daily schedules generated by a dispatcher.  *Id.*

25  Both types of employees maintain telephone and/or radio contact with dispatchers.  *Id.*

26         B.  Plaintiff's Claims

27

28
                                                  2

United States District Court
For the Northern District of California

1    Broadly, Plaintiff objects to two practices:  (1) Defendant's alleged failure to provide

2  adequate meal and rest breaks, and (2) Defendant's alleged shifting of hours between pay periods

3  to avoid paying overtime.

4    1.   Meal and Rest Breaks

5    Plaintiff alleges that Defendant has a policy of requiring workers to work through their

6  meal breaks, while still counting the time as unpaid meal break time.  Specifically, Plaintiff alleges

7  that workers are required to remain with their vehicles, and are required to answer phone or radio

8  calls during breaks that, under California law, are supposed to be completely free from work

9  responsibilities.  Because they were required to remain on duty and at work, Plaintiff argues, they

10  should have been paid for time they spent on these "breaks."  But they were not paid for their

11  breaks, Plaintiff explains, because Defendant automatically deducts one half hour from each shift

12  for the unpaid breaks workers are supposedly taking.  SAC at ¶ 21.  Further, because the shifts in

13  which these breaks should have been taken were generally longer than eight hours, Plaintiff

14  alleges, the missing pay should be at the overtime rate.

15    Plaintiff alleges that Defendant deprived him of his breaks in two ways: (1) by adopting an

16  official written policy that does not allow adequate off-duty breaks; and (2) by scheduling his work

17  days too tightly to allow for off-duty breaks.

18    As regards the written policy, Plaintiff draws on several sources to stitch together what he

19  alleges is Defendant's official meal and rest break policy.  First, Defendant provides its employees

20  with an "Associate Handbook," which includes a policy on meal and rest breaks.  *See* Camp Decl.

21  Exhs. 4-6.  The written policy states, in relevant part, that:

22    Lunch and Break Schedules for Non exempt Associates.  United Site Services
23    recognizes the importance of taking rest periods during the course of the workday
   and has established a meal and relief period policy.  Meal and break periods are
24    intended to provide associates time to eat, relax, or take care of personal business
   while at work, but completely free from work responsibilities.  Associates are
25    responsible for ensuring they take their scheduled lunch break period.  If you are a
   non exempt (paid by the hour) associate, you must punch in and out for your lunch
26    breaks.  If you are a driver, please check with your division regarding the procedure
   for reporting your lunch breaks.  Lunch breaks must be taken daily.  United Site
27    Services complies with all applicable federal, state and local laws.  Please refer to
   your work location and manager for break and lunch schedules.

28

United States District Court
For the Northern District of California

1  Associate Handbook, Camp Decl. Exh. 4, at 15.

2      Plaintiff alleges that because this policy says that breaks are taken "while at work," it

3  amounts to a blanket rule that employees are not permitted to leave their trucks during meal breaks.

4  Mot. at 3.  Plaintiff also refers to another part of the Associate Handbook, a section governing use

5  of company vehicles, which explains that "unauthorized stops and side trips are prohibited."  Mot.

6  at 3-4, citing Associate Handbook, Camp Decl. Exh. 4, at 28.  According to Plaintiff, this general

7  vehicle use policy forbids employees to go anywhere on their meal breaks that is not along their

8  routes.  *Id.*  Finally, Plaintiff points to portions of the job descriptions Defendant provides for

9  Service Technicians and Pickup and Delivery Drivers that note a requirement that employees

10  "maintain two-way radio contact with dispatch."  Mot. at 4, citing Camp Decl. Exhs. 2, 3.  Plaintiff

11  alleges that this policy forbids workers to be out of contact with dispatch during their breaks.

12      Taken together, Plaintiff argues, these three separate provisions establish an official written

13  policy requiring workers to remain on duty during meal breaks; as such, they must be paid for these

14  break periods, since they are not completely free from employer control, as required by California

15  law.

16      Aside from the written policies, Plaintiff also alleges that he was not given time to take

17  breaks and was unable to take them on his own initiative due to Defendant's demands that he

18  complete his route and service a large number of units within a short period of time.  Mot. at 5-6.

19  In other words, Plaintiff argues that it was not possible to both do everything demanded of him by

20  defendant *and* take a lunch break.  Thus, Plaintiff argues, regardless of Defendant's official

21  policies, Defendant's practices deprived employees of their off-duty breaks, while still deducting

22  pay for the time spent on those breaks.

23      2.  Hours Shifting

24      In addition to his meal and rest break claims, Plaintiff alleges that he was instructed by his

25  supervisor, Jose Cortez, to record hours worked in excess of 12 hours in a day in future pay

26  periods.  *See* SAC at ¶¶ 16-17; Mot. at 9.  This practice, known as "hours shifting," would deprive

27  workers of overtime pay, as workers are entitled to double their regular rate of pay for hours in

28

4

1  excess of twelve in a single day.  SAC at ¶ 17.  Plaintiff further alleges that many employees in

2  Northern California were subjected to this practice.  Mot. at 9.

3        C.  Procedural Background

4        Plaintiff filed this putative class action on January 20, 2012, alleging (1) violations of the

5  Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*; and (2) state law violations of

6  Industrial Welfare Commission Wage Orders and the California Labor Code.  ECF No. 1.  A First

7  Amended Complaint was filed on March 6, 2012, ECF No. 6, to which Defendant filed an answer

8  on April 9, 2012.  ECF No. 20.  On July 10, 2012, Plaintiff filed a motion for leave to file a Second

9  Amended Complaint ("SAC"), ECF No. 33, which Defendant did not oppose. Defendants deemed

10  the SAC filed on August 31, 2012.  ECF No. 63.  Defendant filed an answer to the SAC on

11  September 14, 2012.  ECF No. 69.  Plaintiff now seeks to certify the following class:

12        All current and former employees of Defendant in the position of Service-Tech and
         Pick Up and Delivery Drivers working in the State of California within the last four
13        years preceding the filing of the complaint to date, who worked one or more shifts
         in excess of (5) hours in duration and did not receive a 30 minute meal period or 10
14        minute rest period during which they were relieved of all duties. (First Meal Period
         and First Rest Period Class).
15

16        Plaintiff also seeks to certify several sub-classes;

17        1. All current and former employees of Defendant in the position of Service-Tech
         Non-CDL and Pick Up and Delivery Driver working in the State of California
18        within the last four years preceding the filing of the complaint to date, who worked
         one or more shifts equal to or greater than six (6) hours but less than ten (10) hours
19        in duration who did not receive a second rest period during which they were
         relieved of all duties. ("Second Rest Period Class")
20

21        2. All current and former employees of Defendant in the position of Service-Tech
         and Pick Up and Delivery Driver working in the State of California within the last
22        four years preceding the filing of the complaint to date, who worked one or more
         shifts in equal to or greater than (10) hours in duration who did not receive a second
23        30 minute meal period or third 10 minute rest period during which they were
         relieved of all duties. ("Second Meal Period and Third Rest Period Class")
24

25        3. All current and former employees of Defendant in the position of Service-Tech
         and Pick Up and Delivery Driver working in the State of California within the last
26        four years preceding the filing of the complaint to date, who worked one or more
         shifts equal to or greater than (14) hours but less than (16) hours in duration who did
27

28
                                          5

not receive a fourth rest period during which they were relieved of all duties. ("Fourth Rest Period Class")

4. All current and former employees of Defendant in the position of Service-Tech and Pick Up and Delivery Driver working in the State of California within the last four years preceding the filing of the complaint to date, who worked one or more shifts at least (15) hours in duration who did not receive a third meal period during which they were relieved of all duties. ("Third Meal Period Class")

5. All current and former employees of Defendant in the position of Service-Tech and Pick Up and Delivery Driver working in the State of California in the Northern Division from June 22, 2009 through March 11, 2011, who worked one or more shifts greater than twelve (12) hours in duration, but were not compensated for such hours in excess of (12) at double their regular hourly wage rates due to Defendant's illegal shifting of daily work hours during the statutory period. ("Double Time Class")

In addition, Plaintiff seeks conditional certification of a FLSA collective action, to permit notice to potential opt-in plaintiffs. The class Plaintiff proposes for his FLSA collective action consists of:

All current and former employees of Defendant titled Service-Tech-Non-CDL and Pick Up Delivery Drivers residing in and working within the State of California working at least 38 hours during any week within the last 3 years, paid under a compensation system where unpaid breaks were automatically deducted without regard for whether work was actually performed during those breaks.

The standards for certification are different for the two types of classes. Accordingly, the Court will address these two certification requests in turn.

## II.   ANALYSIS

### A.   Class Certification

Class certification of Plaintiff's state law wage and hour claims is governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiff bears the burden of establishing that all four requirements of Rule 23(a) are met, as well as the requirements for one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Whether or not to certify a class is within the discretion of the Court. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-CIO CLC v. ConocoPhilips Co.*, 593 F.3d 802, 807 (9th Cir. 2010).

6

1    The Plaintiff must establish that: "(1) the class is so numerous that joinder of all members is

2    impracticable; (2) there are questions of law or fact common to the class members; (3) the claims

3    or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

4    the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ.

5    P. 23(a). These requirements are typically referred to as the numerosity, commonality, typicality

6    and adequacy requirements. *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 599 (S.D. Cal.

7    2010). Additionally, Plaintiff must establish one of the three requirements of Rule 23(b). Here,

8    Plaintiff seeks to certify a class for his state law claims pursuant to Rule 23(b)(3). *See* Mot. at 17.

9    In order to certify a class pursuant to Rule 23(b)(3), the Court must find that "questions of law or

10   fact common to class members predominate over any questions affecting only individual members,

11   and that a class action is superior to other available methods for fairly and efficiently adjudicating

12   the controversy." Fed. R. Civ. P. 23(b)(3).

13   Plaintiff has proposed a broad class definition, and five subclasses. The broad class and

14   one of the four subclasses contain overlapping meal and rest break claims. One subclass contains

15   only meal break claims, and two contain only rest break claims. A final subclass concerns

16   improper overtime pay.

17   However, Plaintiff has not stated a claim for rest break violations. At the hearing, Plaintiff

18   explained that the rest break claims were authorized by California Labor Code § 226.7. While this

19   statute does create an action for violation of rest break requirements, it is nowhere in Plaintiff's

20   SAC. The SAC pleads only §§ 510 and 558 of the California Labor Code, which concern

21   employees who are underpaid or deprived of overtime compensation, and violation of the IWC

22   Wage Orders, which do not contain a private right of action. *See Thurman v. Bayshore Transit*

23   *Mgmt., Inc.*, 204 Cal. App. 4th 1112, 1132 (2012). The SAC thus does not include any cause of

24   action that can properly support rest break claims. To allow Plaintiff to add a proper rest break

25   claim under § 226.7 now, in a motion for class certification, would be prejudicial to Defendant.

26   Because there are no proper rest break claims in this case, the Court cannot certify the rest break-

27   only subclasses, and need not analyze the certification issues concerning rest break claims in the

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

1    overlapping meal break and rest break classes.  In any event, Plaintiff focuses his analysis in his

2    certification motion on meal breaks.  Accordingly, the Court will focus its discussion on meal

3    breaks, not rest breaks.

4         The fifth subclass, or "double time class," raises different issues from the meal and rest

5    break subclasses, and will be addressed separately in this Order.

6    **Meal and Rest Classes**

7         Defendant does not contest that Plaintiff has satisfied the numerosity and adequacy

8    requirements for its meal and rest break classes.  *See* Opp'n at 7.  As the number of potential class

9    members here is close to 500, Mot. at 12, the Court agrees that the numerosity requirement is

10   satisfied.  Further, there is no indication of any conflict of interest among the class, and both parties

11   agree that Plaintiff's counsel, who is quite experienced, is adequate.  *See* Opp'n at 7.  The Court

12   thus agrees that the adequacy requirement is satisfied.  Accordingly, the Court will address the

13   commonality and typicality requirements of 23(a), followed by the requirements of 23(b)(3).

14        1.  Commonality

15        Rule 23(a)(2) requires that there be "questions of fact and law common to the class."

16   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To satisfy Rule 23(a)'s

17   commonality requirement, a class claim "must depend upon a common contention. . . of such a

18   nature that it is capable of classwide resolution – which means that determination of its truth or

19   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

20   *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011).  As the Supreme Court explained in

21   *Wal-Mart,* the key consideration in assessing commonality is "not the raising of common questions

22   – even in droves – but, rather, the capacity of a classwide proceeding to generate common *answers*

23   apt to drive the resolution of the litigation."  *Id.* (internal citations and quotation omitted).

24   However, "[a]ll questions of fact and law need not be common to satisfy the rule.  The existence of

25   shared legal issues with divergent factual predicates is sufficient."  *Hanlon*, 150 F.3d at 1019.

26        In this case, Plaintiff has asserted that "[t]he single issue common to all class members is

27   whether, under Defendant's written policies, they were provided valid meal and rest breaks under

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

1    California law." Mot. at 15.  However, as explained below,  Defendant's company-wide written

2    policies are not sufficiently specific to resolve the question of whether individual class members

3    were provided valid meal breaks.  Because liability cannot be established with reference to the

4    written company-wide policies alone, this question cannot be answered on a class-wide basis, and

5    thus cannot suffice to satisfy the commonality requirement.

6         Rule 23(a), however, requires only that there exist shared legal issues – not that all issues

7    must be common to the class.  Thus, the existence of individual questions does not defeat

8    commonality.  Here, there is a common question as to whether Defendant had an illegal policy or

9    practice of deducting time from its workers' shifts for off-duty meal breaks whether or not those

10   breaks were taken.  *See* SAC ¶ 21.  This question concerns a policy of Defendant that appears to be

11   company-wide, and Defendant has presented no evidence to the contrary; indeed, Defendant's Vice

12   President confirmed that this is Defendant's policy.  *See* Bartholomew Depo., Camp. Decl. Ex. 32,

13   at 82:12-15 ("Q: Whether they're taking their lunch or being given their lunch, 30 minutes is

14   deducted from each day from their pay for that lunch, correct? A: Correct.").  As such, questions

15   concerning the details and legality of this policy can be answered on a class-wide basis.  Though

16   there may be "divergent factual predicates" concerning how this policy affected different

17   employees, it does raise "shared legal issues," which is all that is required to satisfy the

18   commonality requirement of Rule 23(a).  *Hanlon*, 150 F.3d at 1019.

19        2.  Typicality

20        The typicality inquiry under Rule 23(a)(3) is permissive and requires that Plaintiff establish

21   "the claims or defenses of the representative parties are typical of the claims or defenses of the

22   class."  Fed. R. Civ. P. 23(a)(3).  The representative claims need not be "substantially identical" to

23   those of absent class members, just reasonably coextensive.  *Hanlon*, 150 F.3d at 1020.  "The test

24   of typicality is whether other members have the same or similar injury, whether the action is based

25   on conduct which is not unique to the named plaintiffs, and whether other class members have

26   been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

27   (9th Cir. 1992).

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

Here, Plaintiff has alleged that all class members suffered the same injury, namely being required to remain on duty during meal breaks without being paid for that time, and being deprived of overtime compensation.  Though there may be different legal and factual analyses involved in different class members' claims, the alleged injury is basically identical for all the class members. Accordingly, the Court finds the typicality requirement satisfied.

### 3.  Predominance

In order to establish class certification pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  The Supreme Court has explained that "[e]ven if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

As explained above, Plaintiff presents two distinct theories for how Defendant deprived employees of meal breaks.  First, Plaintiff argues that Defendant's formal written meal break policy as it appears in the Associate Handbook uniformly required all employees to work through meal breaks.  Thus, according to Plaintiff, the legality of the written meal break policy is a common question.  The Court does not agree.  The written policy is ambiguous, and explicitly leaves discretion to individual managers.  Thus, the written policy, without more, cannot establish whether and how any given employee was actually given meal breaks.

Specifically, Plaintiff relies on the Associate Handbook's statement that "Meal and break periods are intended to provide associates time to eat, relax, or take care of personal business while at work, but completely free from work responsibilities" for his argument that United Site Services workers were never permitted to leave their trucks during their meal breaks.[2]  Associate Handbook,

---

[2] Plaintiff also points out that the Associate Handbook indicates that "Rest periods are counted as hours worked and may be controlled by the Company," and argues that this language establishes that meal breaks were not free from company control as required. Mot. at 7; Associate Handbook, Camp Decl. Exh. 4 at 16.  But Plaintiff conflates the ten-minute rest break policy, for which employers are not required to fully relinquish control, *see* IWC Wage Order No. 5 at subdivision 12, with the meal break policy, which does require employers to relinquish control.  *Id.* at subdivision 11; *see also Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1034-35 (2012).  The Associate Handbook's statement that "rest periods. . . may be controlled by the company" refers to 10-minute rest periods, not to half-hour meal breaks.  Associate Handbook, Camp Decl.

10

United States District Court
For the Northern District of California

Camp Decl. Exh. 4, at 15.  But this language is not sufficiently specific to establish that employees either were or were not permitted to leave their trucks.  On its face, the policy could mean that drivers must remain in their trucks, as Plaintiff suggests, else they would not be "at work."  But it could also simply mean that the meal breaks are provided to allow employees some time for personal needs during the work day, as opposed to after their shifts.  In other words, it could simply identify the "when," not the "where," of meal breaks.  And even if it does refer to the "where," it is not at all clear what "at work" would mean, when read in the context of the entire policy.  The policy provides that employees be "free from work responsibilities" during meal breaks, and applies to employees who do their work out in the field, at customer sites and on the road.  Thus, even if "at work" is meant to denote a place, it could mean that employees are out in the field when they take meal breaks – not that they are required to remain inside their trucks.  The language of the Associate Handbook simply does not specify where breaks must be taken.

Indeed, Plaintiff's own evidence confirms that the written policy does not generate uniform practices.  Plaintiff points to deposition testimony given by Defendant's Operations Manager, Kenneth Gadberry,[3] to support his theory that employees could not leave their trucks or routes during meal breaks.  Mot at  3; Reply at 7.  But Mr. Gadberry, when asked to confirm that drivers "can't leave work" for their meal breaks, said "I'm not sure.  I'm not following you."  Camp Decl. Exh. 31 at 13:9.  Mr. Gadberry further demonstrated his belief that the "while at work" language refers to the "when," not the "where," of the breaks: "To be – I'm understanding the question as – as, maybe the obvious, if they're not at work, they can't take a break, right?  So yes, they have to be at work."  Id. at 13:4-7.  Despite Plaintiff's assertions to the contrary, it does not appear that Mr. Gadberry interpreted the policy to require drivers to remain with their trucks.  In addition, Defendant's Vice President Mark Bartholomew testified that the question of whether drivers had to take meal breaks with their trucks was "still a hard one to answer."  See Camp Decl. Exh. 32 at 54:15.  When asked to confirm that employees were "not free to come and go as they please during

Exh. 4 at 16.  Defendant's Meal Break policy, in contrast, explicitly states that while on meal break, employees are "completely free from work responsibilities."  Camp Decl. Exh. 5 at 15.
[3]  At the November 8, 2012 hearing, Defendant's counsel clarified that Mr. Gadberry, who also goes by Ty Gadberry, is the operations manager for the San Jose location.

11

United States District Court
For the Northern District of California

their meal break," Mr. Bartholomew said, "They are."  *Id.* at 54:18-20.  This testimony simply does not support Plaintiff's contention that the Associate Handbook language constitutes a uniform policy against leaving the trucks, and Plaintiff has presented no other evidence that the Associate Handbook's section on meal breaks produced a uniform policy.

In addition to the Associate Handbook's lack of clear statement that meal breaks must be taken in employees' trucks, the Associate Handbook's meal break policy explicitly leaves discretion to individual managers to determine the details of the breaks.  Specifically, the policy directs employees to "Please refer to your work location and manager for break and lunch schedules."  *See* Associate Handbook, Camp Decl. Exh. 4 at 16.  Thus, even if Plaintiff's particular supervisor required workers to stay in their trucks, that would say nothing about the supervisors at any of the 15 other locations.  When each manager may exercise his own discretion in implementing a company policy, the legality of the policy as implemented is not common to all members of a class supervised by many different managers.  *See Wal-Mart*, 131 S.Ct. at 2554-55 ("Respondents have not identified a common mode of exercising discretion that pervades the entire company….").

In addition to the meal break policy, Plaintiff relies on the company vehicle policy, contending that it uniformly forbids deviation from assigned routes during meal breaks.  The vehicle policy says, as relevant, "Unauthorized stops and side trips are prohibited."  Associate Handbook, Camp Decl. Exh. 4, at 28.  But it is not clear from the face of the written policy whether those requirements apply during meal breaks, or only during actual working hours, of which off-duty meal breaks are not a part.  As Plaintiff notes, Operations Manager Kenneth Gadberry, during deposition, confirmed that the no-side-trips policy applies "during their work schedule."  Camp Decl. Exh. 31 at 16:2-3.  But whether a meal break is "during the work schedule" is an open question.  Indeed, Vice President Mark Bartholomew explicitly testified that drivers "are able to vary from their route" during lunch breaks, and that the restriction on side-trips applied only to trips that extended beyond the authorized 30-minute meal breaks.  *See* Camp Decl. Exh. 32 at 54:9-10; 59:4-23.  This testimony is consistent with an interpretation of the written policy as applying

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

1    only when employees are on duty, and not during their breaks.  Plaintiff has presented no other

2    evidence that Defendant applied this policy to forbid deviations from routes during lunch breaks.

3    Thus, Plaintiff cannot establish, by reference to the written vehicle policy, that there was any

4    company-wide practice of forbidding employees to go off their routes during meal breaks.

5         These ambiguities in the written policy and Defendant's interpretations thereof make plain

6    the fact that even if some managers required drivers to stay in their trucks and on their routes, the

7    company's written policies did not uniformly require them to do so.  Plaintiff has presented no

8    evidence, beyond the Associate Handbook language and the ambiguous testimony of Defendant's

9    managers, that there was a uniform official policy regarding specific meal break requirements.

10   Thus, the existence of a written policy does not, in this case, establish a common question that can

11   be resolved for all class members in a single analysis.  Further, Plaintiff has not argued or

12   presented any evidence that Defendant maintained an unwritten uniform policy.  Rather, each class

13   member will have to prove that he was required to stay on duty during his break.  These fact-

14   intensive individual inquiries far outstrip any common questions concerning meal breaks.

15        Plaintiff's second theory is that regardless of the written policy, the demands of his job and

16   route schedule made it impossible to take the breaks to which he was entitled.  *See* Mot. at 5-6.

17   Adjudication of this claim will require an analysis of each individual driver's route and schedule,

18   which varies even from day to day for any given individual.  *See Brown v. Federal Express Corp.*,

19   249 F.R.D. 580, 586 (C.D. Cal. 2008) (denying class certification on predominance grounds to a

20   group of drivers claiming they were not given meal breaks because "[d]etermining whether the

21   specific expectations for any given driver sufficiently account for variances in route and daily

22   fluctuations such that drivers may take required breaks would require a highly individualized

23   inquiry" and "the variation in facilities introduces the additional complexity of understanding the

24   management policies unique to each facility and how they impact drivers' schedules."); *Kenny v.*

25   *Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ("Plaintiff's next theory – that the stores were too

26   busy to give employees a meaningful opportunity to take breaks – requires an individual inquiry

27   into each store, each shift, each employee.").  This individual question cannot be addressed after a

28

13

**United States District Court**
For the Northern District of California

1   determination of class-wide liability as a question of damages, as it goes to the heart of the liability

2   inquiry: whether each employee was required to work through breaks at all, rather than to how

3   much additional compensation any given employee is entitled.

4          Plaintiff has presented one declaration from an individual dispatcher claiming that he urged

5   service technicians who had stopped their trucks to start moving again.  *See* Declaration of Max

6   Edward Torres, Exh. 11 to Camp Decl., at ¶¶ 7-9.  If indeed the company had a uniform practice of

7   interrupting employees' breaks to urge them to get back to work, the proof problems of *Federal*

8   *Express* and *Supercuts* would certainly be lessened, as the inability to take breaks would not

9   depend on the demands of each employee's schedule on any given day, but rather on Defendant's

10  practice of urging employees to keep moving.  But Plaintiff's single declaration cannot establish

11  that any such practice was applied to the whole class.  First, Mr. Torres only worked with service

12  drivers, not pickup and delivery drivers.  As the class is defined as including both types of drivers,

13  Mr. Torres's practices cannot establish what was required class-wide.  Second, the declaration does

14  not establish that any other dispatchers, at the San Jose location or any other location, behaved

15  similarly.  Indeed, Mr. Torres reported to Jose Cortez, the same San Jose manager who supervised

16  Plaintiff and allegedly required hours-shifting, *id.* at ¶ 5, and whom Defendant has admitted was a

17  "rogue supervisor."  Opp'n at 9.  As Defendant has already admitted that Mr. Cortez did things that

18  were not authorized by any company policy, evidence that Mr. Cortez permitted or encouraged a

19  certain practice cannot establish that there was a company-wide policy permitting it.

20          Plaintiff has, however, presented evidence that Mr. Cortez required all of his employees to

21  work overly rushed schedules that would not permit meal breaks.  *See* Cortez Decl., Camp Decl.

22  Exh. 10, at ¶ 10 (identifying an "official unwritten policy" that service drivers not take breaks and

23  that San Jose drivers falsify their logs to indicate breaks that were never taken).  Further, Defendant

24  explained at the hearing that Mr. Cortez was, for much of the proposed class period, the only

25  supervisor at the San Jose location, and that the number of employees he supervised was

26  somewhere between 50 and 100.  Thus, this evidence suggests the possibility that a smaller group –

27  San Jose drivers who worked during Mr. Cortez's time as supervisor – may have been subjected to

28

14

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

1    a common practice that did not permit the required breaks.  Accordingly, Plaintiff may be able to

2    establish predominance with a revised class definition.  The Court will therefore grant Plaintiff

3    leave to amend his motion for class certification to propose a more limited class definition.

4            Finally, Plaintiff cites two recent cases from this district certifying classes of workers who

5    claimed to be required to remain on the premises of their employer during their meal breaks.  But

6    in both of these cases, the company policy requiring workers to remain available was unambiguous

7    and undisputed.  The question, instead, was whether the acknowledged policy was legal.  *See*

8    *Gardener v. Shell Oil Co*, No. C-09-05876-CW, 2011 WL 1522377 (N.D. Cal., April 11, 2011);

9    *Delagarza v. Tesoro Refining and Marketing Company*, No. C-09-5803-EMC, 2011 WL 4017967

10   (N.D. Cal., Sept. 8, 2011).  Here, as explained above, Plaintiff cannot show that there was a

11   uniform policy or practice.  Thus, the availability of, and requirements during, meal breaks are

12   individual questions that predominate over any common questions.

13           4.   Superiority of Class Action

14           Rule 23(b)(3) tests whether a class action is superior to "other available methods for the fair

15   and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3) the

16   court must evaluate whether a class action is a superior method of adjudicating plaintiffs' claims by

17   evaluating four factors: "(1) the interest of each class member in individually controlling the

18   prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

19   controversy already commenced by or against the class; (3) the desirability of concentrating the

20   litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in

21   the management of a class action."  *Leuthold*, 224 F.R.D. at 469 (*citing Zinser*, 253 F.3d at 1190-

22   92).

23           In this case, the class members are unlikely to have individual interest in prosecuting

24   separate actions, because the amounts of money involved are relatively small in comparison to the

25   cost of litigation.  However, the fourth factor presents an obstacle to superiority.  As explained

26   above, individual proof will be necessary to establish for each employee whether meal breaks were

27   taken or permitted, and what restrictions were placed on those breaks.  This will entail a detailed

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

factual investigation for each of as many as 492 class members.  As many of the purported class members recorded breaks on their time sheets that Plaintiff is claiming were never taken, this investigation will require testimony by employees and their supervisors, which may come down to a question of individual witness credibility.  *See* Mot. at 12.  These inquiries simply will not be manageable in a single class trial.  Because a class action will be unmanageable, it is not superior to individual actions.

Manageability could, however, present much less of a problem for a more limited class.  If Plaintiff is able to establish that a class of San Jose drivers was uniformly prevented from taking full meal breaks, the individual questions would be limited to how *many* breaks employees were required to work through – essentially a question of damages.  Differences in the amount of class members' damages do not defeat class certification.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  Thus, Plaintiff may be able to succeed in establishing superiority with an amended class certification motion.

In sum, though the proposed meal and rest classes satisfy the four requirements of Rule 23(a), they cannot satisfy the predominance and superiority requirements of 23(b)(3).  Accordingly, no class can be certified at this time.  However, Plaintiff's evidence does suggest that common issues may predominate among a more limited class of drivers at the San Jose location, during a class period limited to the tenure of Jose Cortez, and that such a class also has the potential to satisfy the superiority requirement.  Accordingly, the Court grants Plaintiff leave to file an amended class certification motion.

**Double Time Class**

Plaintiff's proposed double-time subclass presents a different set of issues, in that it does not allege any official or written company-wide policy.  But ultimately, it must fail for the same reason that the meal and rest classes fail: it will require individualized proof that each worker was required to shift his time reporting so as to avoid overtime pay.

As an initial matter, this proposed subclass is smaller in geographic scope than the meal and rest classes; it encompasses only workers "in the Northern Division."  Mot. at 10.  Plaintiff has not

16

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

1   specified which or how many locations this Northern Division encompasses. According to

2   Defendant, it includes six locations. Opp'n at 15. Yet Plaintiff has submitted just one declaration

3   that an individual supervisor, Jose Cortez, intentionally manipulated timeclocks to avoid paying

4   overtime. *See* Declaration of Jose Cortez, Exh. 10 to Camp Decl., at Exh. ¶ 9.[4]   Further, Mr.

5   Cortez has testified that he did not ask all of his employees to shift their time:

6          Q: And was this for all of the employees that you supervised?

7          A: No.

8          Q: What? Certain employees?

9          A: Yes.

10   Depo. of Jose Cortez, Jr , Exh. 1 to Decl. of Susan E. Bishop, at 49:20-50:1. Although Plaintiff

11   asserts in his motion that Mr. Cortez's role involved "overseeing various locations in United's

12   Northern District, including San Jose operations," Mot. at 9, Mr. Cortez, the only manager Plaintiff

13   has identified as being involved in time shifting, specifically testified that he did not know of the

14   practice happening beyond San Jose. Cortez Depo. at 53:20-25. As Plaintiff's proposed class

15   includes all of Northern California, Mot. at 1, Mr. Cortez's activities do not establish any class-

16   wide practice. Plaintiff has not alleged, or submitted any evidence, that Mr. Cortez's actions were

17   carried out pursuant to a larger company policy, or that any other supervisor did the same thing, or

18   even that Mr. Cortez shifted time for any employees outside of San Jose. Thus, the question of

19   whether employees in the proposed class were deprived of overtime pay cannot be answered for all

20   Northern Division employees with one analysis; rather, each employee will have to prove that he

21   specifically was asked to shift hours.

22   _____

23   [4] Defendant has requested that the Court take judicial notice of a case filed in Santa Clara County
     Superior Court by Jose Cortez: *Jose Cortez v. United Site Services of California, Inc.*, Case No. 1-

24   11-CV-207540. ECF No. 78. Under Federal Rule of Evidence 201, the "court may judicially
     notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the

25   trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources
     whose accuracy cannot reasonably be questioned." Fed.` R. Evid. 201. "A trial court may

26   presume that public records are authentic and trustworthy," *Gilbrook v. City of Westminster*, 177
     F.3d 839, 858 (9th Cir.1999), and, thus, fall within the purview of Federal Rule of Evidence 201.

27   Accordingly, the Court GRANTS Defendant's request for judicial notice.

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

1       In addition, unlike the meal break claims, here, there are predominance problems even for a

2   narrower, San Jose-only class.  Although Mr. Cortez was, as noted above, the only supervisor in

3   San Jose for much of the proposed class period, Mr. Cortez's testimony that he did not engage in

4   time shifting for all of his employees establishes that there was no common policy as to all the San

5   Jose drivers.  Rather, each driver will have to show that he worked overtime hours that were shifted

6   to a later pay period.  Given that this inquiry, like the meal break inquiry, necessarily involves

7   information not contained in Defendant's time records for employees, it will be individual and fact-

8   intensive.  Thus the double time class, like the meal and rest classes, cannot satisfy the

9   predominance requirement.

10      In sum, because none of the proposed classes or subclasses can satisfy Rule 23(b)'s

11  predominance requirement, no class can be certified.  Accordingly, Plaintiff's motion to certify a

12  class is DENIED.  However, it remains possible that Plaintiff could establish all of the certification

13  requirements for a more limited class of drivers in San Jose during the tenure of Jose Cortez who

14  were not permitted to take meal breaks.  Accordingly, the denial of certification is without

15  prejudice; Plaintiff may file an amended motion for class certification within 21 days of this Order.

16      B.      Collective Action Under FLSA

17      Plaintiff asserts that Defendant has violated FLSA by failing to pay overtime compensation.

18  SAC at ¶ 47; Mot. at 22.  The class Plaintiff proposes for his collective action consists of:

19          All current and former employees of Defendant titled Service-Tech-Non-CDL and
20          Pick Up Delivery Drivers residing in and working within the State of California
            working at least 38 hours during any week within the last 3 years, paid under a
21          compensation system where unpaid breaks were automatically deducted without
            regard for whether work was actually performed during those breaks.

22  SAC at ¶ 33.

23      Under FLSA, employees may bring a collective action on behalf of other "similarly

24  situated" employees based on alleged violations of FLSA.  29 U.S.C. § 216(b).  In contrast to class

25  actions pursuant to Federal Rule of Civil Procedure 23, potential members of a collective action

26  under FLSA must "opt-in" to the suit by filing a written consent with the Court in order to benefit

27  from and be bound by a judgment.  *Id.; see also Leuthold v. Destination America, Inc.*, 224 F.R.D.

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

1    462, 466 (N.D. Cal. 2004).  Employees who do not opt in may bring a subsequent private action.

2    *Leuthold*, 224 F.R.D. at 466 (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508

3    n.11 (9th Cir. 1990)).  The determination of whether a collective action under FLSA is appropriate

4    is within the Court's discretion.  *See Adams v. Inter-Con Security Sys., Inc.*, 242 F.R.D. 530, 535

5    (N.D. Cal. 2007).  Plaintiff bears the burden to show that he and the proposed class are "similarly

6    situated."  *See id.* (citing 29 U .S.C. § 216(b)).

7             FLSA does not define "similarly situated."  Although the Ninth Circuit has not yet

8    articulated the proper test for certification of a FLSA action, district courts in this circuit have

9    applied a two-step inquiry.  *See, e.g., Leuthold*, 224 F.R.D. at 466-67; *see also Adams*, 242 F.R.D.

10   at 536; *Prentice v. Fund for Public Interest Research, Inc.*, No. C-06-7776-SC, 2007 WL 2729187,

11   at *2 (N.D. Cal. Sept.18, 2007).  Under the first step, the court makes an initial "notice stage"

12   determination of whether potential opt-in plaintiffs are similarly situated to the representative

13   plaintiffs, determining whether a collective action should be certified for the purpose of sending

14   notice of the action to potential class members.  *See, e.g., Thiessen v. Gen. Elec. Capital Corp.*, 267

15   F.3d 1095, 1102 (10th Cir. 2001).  For conditional certification at this notice stage, courts require

16   little more than substantial allegations, supported by declarations or discovery, that "the putative

17   class members were together the victims of a single decision, policy, or plan."  *Id.*; *see also Morton*

18   *v. Valley Farm Transport, Inc.*, No. C-06-2933-SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13,

19   2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable

20   basis for their claim of class-wide" conduct) (internal quotation marks and citation omitted);

21   *Stanfield v. First NLC Financial Serv., LLC*, No. C-06-3892-SBA, 2006 WL 3190527, at *2 (N.D.

22   Cal. Nov.1, 2006) (holding that the plaintiffs simply "must be generally comparable to those they

23   seek to represent.").  All that is required is a showing "that some identifiable factual or legal nexus

24   binds together the various claims of the class members in a way that hearing the claims together

25   promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA."

26   *Russell v. Wells Fargo & Co.*, No. 07-CV-3993-CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept.3,

27   2008).

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

Under the second step, "the party opposing the certification may move to decertify the class once discovery is complete." *Adams*, 242 F.R.D. at 536 (citing *Leuthold*, 224 F.R.D. at 467); *Escobar v. Whiteside Constr. Corp*, No. C 08-01120 WHA, 2008 WL 3915715, at *3 (N.D. Cal. Aug 21. 2008) ("Certification is called 'conditional' during the first stage because the opposing party could always (successfully) move for decertification."). "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield*, 2006 WL 3190527, *2. At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at 467. In this case, discovery is still ongoing; fact discovery does not close until April 11, 2013. Accordingly, the Court applies the lower, notice-stage standard for conditional certification.

Plaintiff has made substantial allegations that he and the class members were subject to a common company policy whereby Defendant automatically deducts meal breaks from work time without regard to whether work was actually performed during that meal break. *See* SAC at ¶¶ 21, 33. Plaintiff has supported his allegations with declarations from three of his co-workers who claim to have been injured by this automatic-deduction policy. *See* Camp Decl. Exh. 22-24 (Decls. of Jose B. Lezama Duarte, Juan Arjon Muro, and Francisco Carreno Ibanez); *see also Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) (stating that "[a] plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing," and citing cases in which conditional certification was granted based on three to four declarations).

Because conditional certification of a collective action does not require a showing that common claims predominate, certification is proper based on the allegations that Defendant operated under this common policy, even though to prove liability, individual plaintiffs may still have to prove that they never actually took their breaks, and thus were underpaid. It is sufficient, at this stage, that they were all subject to the same alleged policy.

Defendant argues that Plaintiff did not show that there is a company-wide policy because the employment settings and factual background of each plaintiff are different and the claims are too individualized. *See* Opp'n at 22-23. However, those considerations are properly reserved for

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

after the completion of discovery when Defendant can bring a formal motion to decertify.  *See Goldman v. Radioshack*, No. Civ A 2:03-CV-032, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").  And in any event, for conditional certification, "plaintiffs do not need to provide evidence that every facility relevant to the proposed class maintains an illegal policy."  *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 537 (N.D. Cal. 2007).

In sum, Plaintiff has alleged that he and the other class members are "similarly situated" because they were subject to Defendant's alleged common policy of deducting time from employees' pay without confirming whether they had indeed taken their off-duty breaks.  This suffices for conditional certification of a FLSA collective action.   Accordingly, Plaintiff's motion for conditional certification is GRANTED.

C.  Class Notice and Class List

The parties are hereby ORDERED to meet and confer within 21 days regarding a proposed notice for Plaintiff's FLSA claim.  After 21 days the parties shall file one joint stipulated notice for the FLSA claims.  If the parties cannot agree, then each side may file a proposed notice and a brief, up to three pages, explaining why the proposed notice is appropriate.  Defendant is also ORDERED to produce a list of all current and former employees within the putative class, with their most current known addresses, to Plaintiff's counsel within 21 days of the date of this Order.

III.     MOTION TO STRIKE

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).  However, any such order "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Id.*  Courts generally grant motions to strike or invalidate documents obtained by a party from putative class members only on a finding of actual affirmative misrepresentation or coercion.  For instance, one court found the attachment of a release to a check, such that cashing the check constituted an

21

1    automatic release, to be sufficiently coercive to warrant invalidation of the releases. *County of*

2    *Santa Clara v. Astra USA, Inc.*, No. C-05-03740-WHA, 2010 WL 2724512 (N.D. Cal. July 8,

3    2010).  Another court invalidated opt-outs the defendant had procured from employees at

4    mandatory meetings during the work day, presented in a language many of them could not read

5    well, where there were allegations of serious threats against employees if they did not sign.  *Giufu*

6    *Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. Sept. 29, 2010).  Another Court

7    struck declarations obtained under the guise of a "survey," where 19 declarants subsequently

8    submitted additional declarations stating that they had not understood what they were signing.

9    *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008).

10       A mere *risk* of coercion, in the absence of a specific finding that a defendant's

11   communications were coercive, may warrant a corrective notice, but does not warrant the

12   wholesale invalidation of documents gathered for a legitimate purpose.  *See, e.g.*, *Mevorah v. Wells*

13   *Fargo Home Mortg., Inc.*, No. C-05-1157-MHP, 2005 WL 4813532 (N.D. Cal. 2005) (issuing

14   corrective notice but leaving employee declarations in the record); *Kerce v. W. Telemarketing*

15   *Corp.*, 575 F. Supp. 2d 1354, 1366 (S.D. Ga. 2008) (declining to strike declarations based only on

16   the possibility of coercion in the employer/employee relationship).

17       In this case, Defendant submitted 206 declarations of current employees stating, in short,

18   that they were not prevented from taking their required breaks.  *See* Exh. E to Decl. of Roxanne

19   Briscoe in support of Defendant's opposition to class certification, ECF Nos. 85-91.  Plaintiff

20   argues that the "manner in which the declarations were obtained was misleading and coercive."

21   Mot. to Strike at 3.  According to Plaintiff, the declarations were intended to chill participation in

22   the lawsuit.  Mot. to Strike at 8.  Defendant argues that Defendant was legitimately collecting

23   information from its own employees for use in opposing class certification, consistent with

24   Defendant's theory that its employees were not subject to the uniform policies Plaintiff has alleged.

25   Opp'n to Mot. to Strike at 4.

26       It is undisputed that employees were required to meet with their supervisors at the

27   workplace during work hours to discuss the declarations, that some employees were given the

28

22

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   declarations in one-on-one meetings they had to attend in order to receive their paychecks, and that

2   the employees were not told that they had rights to join the lawsuit as class members or opt-in

3   plaintiffs.  It is also undisputed that employees were explicitly advised in writing that signing was

4   voluntary, they would not be subject to retaliation, and the company wanted them to answer

5   honestly, and that the employees were provided with copies of the declaration and an explanatory

6   letter in both English and Spanish (some employees' primary language).  Though these factors

7   taken together certainly indicate a *risk* of coercion, they are not sufficient for this Court to make a

8   specific finding that employees were coerced to sign these declarations.  Accordingly, the Court

9   DENIES Plaintiff's motion to strike the declarations.

10          However, Defendant's conduct in approaching the potential class members was not

11   exemplary.  The mandatory nature of the meetings, the fact that they were conducted at the

12   workplace during working hours, the linking of the presentation of some declarations with receipt

13   of paychecks, and the fact that employees were not told that the lawsuits involved them did create a

14   *risk* of coercion.  Thus, the Court does not consider the declarations to have any significant

15   probative value, and will not consider them to constitute any sort of opt-out or waiver of claims.

16   While the declarations may remain in the record, the Court will disregard any future attempts by

17   Defendant to use the declarations against class members, opt-in Plaintiffs, or employees bringing

18   separate lawsuits.  Further, the Court agrees with Plaintiff that because employees were not told

19   that signing the declarations could affect their ability to recover in this lawsuit, a corrective notice,

20   informing the employees that they still have a right to participate even if they signed a declaration,

21   is warranted.  Accordingly, the parties are ORDERED include in their proposed FLSA Notice

22   language advising class members that the Court will disregard any declarations they may have

23   signed, and that they may still participate in the suit even if they signed a declaration.

24          Finally, Plaintiff has asked the Court to enter a protective order prohibiting Defendant from

25   communicating "with any plaintiff, opt-in plaintiff or potential class member regarding matters

26   related to this litigation in an intimidating, misleading or coercive manner."  Mot. to Strike at 1.

27

28

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

Such communications are prohibited by *Gulf Oil* and its progeny without the need for an Order from this Court.  Accordingly, the Court finds such an Order unnecessary.

## IV.      CONCLUSION

For the reasons set forth above, the Court DENIES without prejudice Plaintiff's motion to certify a class.  Any amended motion for class certification must be filed within 21 days of this Order.  The Court GRANTS Plaintiff's motion for conditional certification of a collective action. The Court conditionally CERTIFIES the following class for collective action under FLSA § 216(b): All current and former employees of Defendant titled Service-Tech-Non-CDL and Pick Up Delivery Drivers residing in and working within the State of California working at least 38 hours during any week within the last 3 years, paid under a compensation system where unpaid breaks were automatically deducted without regard for whether work was actually performed during those breaks.  The Court ORDERS the parties to prepare the class notice and class list as set forth above.

**IT IS SO ORDERED.**

Dated: November 13, 2012

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 12-CV-00318-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION FOR CONDTIONAL
CERTIFICATION OF COLLECTIVE ACTION; DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California