1  SUSAN E. BISHOP, CA STATE BAR NO. 187253
   BERLINER COHEN
2  TEN ALMADEN BOULEVARD
   ELEVENTH FLOOR
3  SAN JOSE, CALIFORNIA 95113-2233
   TELEPHONE: (408) 286-5800
4  FACSIMILE: (408) 998-5388
   susan.bishop@berliner.com
5
   ATTORNEYS FOR DEFENDANT
6  UNITED SITE SERVICES OF CALIFORNIA, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11 | NELSON GONZALEZ VILLA, on behalf of     | CASE NO.  CV 12-00318 LHK
      himself and all others similarly situated,

12                                           | DEFENDANT'S OPPOSITION TO
            Plaintiffs,                        AMENDED MOTION FOR CLASS
13                                             CERTIFICATION UNDER RULE 23 AND
        v.                                     MEMORANDUM IN SUPPORT THEREOF
14
   UNITED SITE SERVICES OF                   | Date:      April 4, 2013
15 | CALIFORNIA, INC.,                         Time:      1:30 p.m.
                                               Judge:     Koh
16          Defendant.                         Courtroom: 8

17

18

19

20

21

22

23

24

25

26

27

28

   CASE NO.  CV 12-00318 LHK

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT. ................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. DESPITE THE REVISED CLASS DEFINITION, PLAINTIFF STILL DOES NOT MEET ALL OF THE REQUIREMENTS OF RULE 23(A). ............. 2

        1. Numerosity Is Not Disputed. ........................................................................ 3

        2. Plaintiff Cannot Establish Commonality. ..................................................... 3

        3. The Claims Of Plaintiff Are Not Typical Of The Claims Of The Class. ........................................................................................................... 4

        4. Plaintiff Can Fairly And Adequately Protect The Interests Of The Class. ........................................................................................................... 6

    B. THE REQUIREMENTS OF RULE 23(B)(3) HAVE NOT BEEN MET ............... 7

        1. Individual Issues Still Predominate Over Plaintiff's Claims. ...................... 7

            (a) Since *Brinker*, Predominance Can Rarely Be Established For Meal Break Claims Absent A Written Policy That Violates California Law. ................................................................. 8

            (b) Evidence Of A Class-Wide Undermining Of A Formal Policy Of Providing Meal Breaks Is Required Before A Class Can Be Certified. ....................................................................... 9

            (c) It Is Not Enough To Allege That Employees Felt Pressure To Work Through Meal Breaks. ......................................... 11

                (i) Jose Cortez's Statement Is Not Believable. ....................... 11

                (ii) Cortez's Amended Declaration Is Not Enough to Show a Uniform Policy. ........................................................... 12

                (iii) Route Sheets Show That Drivers Did In Fact Take Meal Breaks. .......................................................................... 12

                (iv) Jose Cortez Inaccurately Portrays The Working Environment In San Jose. ................................................... 14

                (v) The Individualized Analysis Would Be Overly Burdensome. ..................................................................... 16

        2. A Class Action Is Not the Superior Method for Adjudicating this Claim. ......................................................................................................... 17

III. CONCLUSION ................................................................................................................... 18

SBISHOP\1128051.1
I10413-20864004

# TABLE OF AUTHORITIES

Page

### Federal Cases

*Amchem Prods, Inc. v. Windsor*
   521 U.S. 591 (1997) ........................................................................................................7

*Cortez v. Best Buy Stores, LP*
   (2012) WL 255345 ...................................................................................................1, 4, 5, 6

*Dilts v. Penske Logistics, LLC*
   (S.D. Cal. 2010) 267 F.R.F. 625.........................................................................................9, 10

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147, 155 (1982). ...................................................................................................2

*Goldberg v. Kelly*
   397 U.S. 254 (1970) ..........................................................................................................18

*Gonzales v. OfficeMax North America*
   (2012) WL 5473764 .......................................................................................................1, 10

*In re Countrywide Fin. Corp. Sec. Litig.*
   2009 U.S. Dist. LEXIS 129807 (C.D. Cal. Dec. 9, 2009).................................................2

*Jimenez v. Allstate Ins. Co.*
   2012 WL 1366052 (C.D.Cal. 2012) ...............................................................................10, 16

*Jimenez v. Domino's Pizza, Inc.*
   238 F.R.D. 241 (C.D. Cal. 2006)......................................................................................8, 18

*Lanzarone v. Gaurdsmark Holdings, Inc.*
   2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) ...................................................................5

*Morales v. Stevco, Inc.*
   2012 WL 1790371 (E.D. Cal. May 16, 2012) ..................................................................9

*Sultan v. Medtronic*
   (2012) WL 3042212 .....................................................................................................1, 11, 16

*Ugas & H & R Block Enterprises, LLC*
   (2012) WL 5230297 ..........................................................................................................1, 4

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227, 1234 (9th Cir. 1996)...............................................................................2, 7, 17

*W. Elec. Co. v. Stern*
   544 F.2d 1196 (3rd Cir. 1976)...........................................................................................18

*Walmart v. Dukes*
   (2011) 131 S.Ct. 2541.......................................................................................................3, 5

SBISHOP\1128051.1
i10413-20864004

1

**Cases**

*Brinker Restaurant Corporation v. Superior Court*
(2012) 53 Cal.4th 1004 ....................................................................................1, 8, 9

*Cicairos v. Summit Logistics, Inc.*
(2005) 133 Cal.App.4th 949 ......................................................................................9

*Jaimez v. DAIOHS USA, Inc.*
(2010) 181 Cal.App.4th 1286 ....................................................................................9

*Tien v. Tenet Healthcare Corp.*
(2012) 209 Cal. App. 4th 1077 ..............................................................................8, 9

**Federal Rules**

Federal Rules of Civil Procedure Rule 23(a).............................................................2, 7

Federal Rules of Civil Procedure Rule 23(a)(2).............................................................3

Federal Rules of Civil Procedure Rule 23(b) ................................................................7

Federal Rules of Civil Procedure Rule 23(b)(3).......................................................7, 17

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

SBISHOP\1128051.1
I10413-20864004

1   Plaintiff Nelson Villa Gonzales Villa, on behalf of himself and all others similarly

2   situated, files an amended motion for class certification under Rule 23 to certify a class of 82

3   employees under the supervision of Jose Cortez from January 22, 2008 to March 1, 2011.

4   Plaintiff's amended motion is based on this Court's order dated November 13, 2012 in which

5   Plaintiff was invited to file an amended motion for class certification limited to drivers in San

6   Jose during the tenure of Jose Cortez who were not permitted to take meal breaks.

7   Even with the more narrowed class definition, Plaintiff's motion for class certification

8   must be rejected as it still requires an individualized analysis like those explicitly rejected by

9   *Gonzales v. OfficeMax North America* (2012) WL 5473764, *Ugas & H & R Block Enterprises,*

10  *LLC* (2012) WL 5230297; *Sultan v. Medtronic* (2012) WL 3042212 and *Cortez v. Best Buy*

11  *Stores, LP* (2012) WL 255345. The narrowed class definition relies primarily on alleged oral

12  communications or job pressure that prevented or discouraged drivers from taking meal breaks.

13  Neither reflect a standardized policy in San Jose and do not establish the requisite common proof

14  required to maintain class certification.

15  Also, although Plaintiff initially sought certification based on both rest and meal period

16  violations he now seeks only class certification related to alleged meal break violations in San

17  Jose. He has not sought to amend his complaint to properly allege rest breaks likely because on

18  December 3, 2012, Plaintiff filed a lawsuit in the Superior Court of the State of California in

19  which he pursues his rest break claim on behalf of himself and all other employees of United Site

20  Services of California, Inc. Request for Judicial Notice as to *Nelson Gonzalez Villa v. United*

21  *Site Services of California*, Inc., Class Action Complaint for Penalties and Damages, Santa Clara

22  County Superior Court Case No. 1-12-CV-237070. USS will vigorously oppose the obvious

23  attempt to forum shop and abuse judicial resources.

24  I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

25  At all times relevant, United Site Services of California, Inc. ("USS") has maintained a

26  written meal period policy to ensure that its employees take proper meal breaks that fully

27  complies with California law and *Brinker Restaurant Corporation v. Superior Court* (2012) 53

28  Cal.4[th] 1004. Plaintiff Villa acknowledged the policy in writing and confirmed in writing each

1    day that he took at least one meal break.  Only after being laid off by USS did Plaintiff Villa

2    assert that the daily writings confirming the hours he worked, including the meal breaks, were

3    incorrect.  In essence, Plaintiff Villa admits that he falsified his time records on a daily basis.

4    Now he is seeking to certify a class of drivers in USS's San Jose location under the supervision

5    of Jose Cortez, claiming that all other San Jose drivers also involuntarily missed meal breaks and

6    are now entitled to meal break premiums.

7        Plaintiff's motion must be denied.  Although there are many reasons to deny the motion,

8    the most prominent undeniable issue is that a highly individualized inquiry will be necessary to

9    determine if a meal break was missed and if so, why the meal break was missed.  The fact that

10   USS can only be liable for premium pay if it failed to provide an opportunity for a meal break

11   forecloses class-wide adjudication of this issue.

12   II.   ARGUMENT[1]

13
14       A.   DESPITE THE REVISED CLASS DEFINITION, PLAINTIFF STILL DOES
            NOT MEET ALL OF THE REQUIREMENTS OF RULE 23(A).

15       Before certifying a class, the trial court must conduct a "rigorous analysis" to

16   determine whether the party seeking certification has met the prerequisites of Rule 23 of the

17   Federal Rules of Civil Procedure. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

18   1996). The party seeking certification "bears the burden of demonstrating" that all Rule 23

19   requirements are satisfied. *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS

20   129807 at *34 (C.D. Cal. Dec. 9, 2009). Indeed, approving a party to represent (and, upon final

21   judgment, bind) absent class members ought not to be taken lightly. *Id.* at 35. Nor should

22   subjecting defendants to the enhanced potential liability that comes with a certified class. *Id.*

23   Indeed, "[t]he class action device was designed as an exception to the usual rule." *Gen. Tel. Co.*

24   *of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982).

25       The party seeking certification must satisfy all requirements of Rule 23(a) (*Id.* at 1234),

26   which are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are

27   _____

28   [1] USS adopts and incorporates by reference each of its earlier arguments in the original Motion
     for Certification and briefs filed therewith as well as the exhibits in support thereof.

CASE NO. CV 12-00318 LHK                    -2-

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

1   questions of law or fact common to the class; (3) the claims or defenses of the representative

2   parties are typical of the claims or defenses of the class; and (4) the representative parties will

3   fairly and adequately protect the interests of the class.   While some elements have admittedly

4.  been established, given the new proposed class, Plaintiff cannot establish two of the four

5   requirements of Rule 23(a).

6                   1.   Numerosity Is Not Disputed.

7                   Defendant has calculated the potential class to include 82 current or

8   former employees.  (Declaration of Mark Bartholomew ¶ 3.)  USS does not dispute numerosity.

9                   2.   Plaintiff Cannot Establish Commonality.

10                  Under Rule 23(a)(2), Plaintiff must show there are questions of law or fact

11  common to the class.  Fed. R. Ci. P. 23(a)(2).  Commonality requires the plaintiff to demonstrate

12  that the class members have suffered the same injury. *Walmart v. Dukes* (2011) 131 S.Ct. 2541,

13  2551.  "That common contention…. must be of such a nature that it is capable of classwide

14  resolution—which means that determination of its truth or falsity will resolve an issue that is

15  central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class

16  certification …. Is not the raising of common 'questions' …. But rather the capacity of a

17  classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.

18  Dissimilarities within the proposed class are what have the potential to impede the generation of

19  common answers." *Id.* (emphasis in original).

20      The Court, in its order denying Plaintiff's motion for class certification, did find that

21  commonality was established by USS's policy of uniformly deducting 30-minutes pay for off-

22  duty meal breaks.  According to the Court, the common question was whether USS had an illegal

23  policy or practice of deducting time from its workers' shifts for off-duty meal breaks whether or

24  not those breaks were taken.  However, what matters to class certification is not the raising of

25  common questions, but rather the capacity of a classwide proceeding to generate common

26  answers apt to drive the resolution of the litigation. *Walmart v. Dukes* (2011) 131 S.Ct. 2541,

27  2551. Here, even if there was a common policy, there is no way to generate common answers,

28

SBISHOP\1128051.1
J10413-20864004

1   because the issue of why a meal break was missed must be answered before meal break liability

2   can be established.

3          An employer's obligation to pay an additional hour of pay is only triggered when the

4   employer "fails to provide" a meal period.  An individual inquiry will therefore be necessary to

5   determine if a meal break was in fact denied.  (In *Ugas v. H & R Block Enterprises, LLC* (2012)

6   WL 5230297, the court granted a motion to decertify a meal break subclass in light of *Brinker.*

7   The court held that "Because *Brinker* requires only that employers give their employees an

8   'opportunity' to take a meal break, plaintiff must demonstrate that defendants' policy provided

9   no such opportunity to *each and every class member*." *Id.* at 4. *(emphasis added).* The Court

10  found that the relevant question for class certification is "when an employee worked through a

11  meal period, was it because defendants failed to provide that employee with an opportunity to do

12  so, or was it because the employee voluntarily chose to work through the meal period for any

13  number of reasons?" *Id.* at 5.  Because resolving such questions requires an individual inquiry,

14  commonality has not been satisfied and the meal break subclass must be decertified." *Id.* at 5.

15         Plaintiff has not established commonality among the putative class members as to their

16  opportunities to take meal breaks.

17                    3.    The Claims Of Plaintiff Are Not Typical Of The Claims Of The Class.

18         Although Plaintiff relies heavily on the declaration of his former

19  supervisor, Jose Cortez, neither Plaintiff nor Cortez has stated how the alleged "unofficial"

20  policy of denying meal breaks was implemented to all other drivers.  Cortez has not said that he

21  announced the policy at staff meetings, called employees on the phone or selectively met with

22  employees to explain the "unofficial" policy.  We know that Cortez alleges that out of the 82

23  employees he supervised, he asked about 20 or 25 of them to falsify their time records. (Cortez

24  Depo. 53:8-19.)  It is possible that it was those same 20 or 25 employees that were "discouraged"

25  from taking meal breaks.   Regardless, inconsistent oral communications would not be the

26  common proof needed to certify a class.

27         *Cortez v. Best Buy Stores, LP* (2012) WL 255345 (C.D. Cal.) is the most instructive.  In

28  *Cortez,* the Plaintiff alleged that while she worked at Best Buy, her employer had a consistent

SBISHOP\1128051.1
I10413-20864004

policy of failing to properly pay wages and provide meal and rest breaks.  Plaintiff sought class certification based in large part on the labor budget of each store that did not account for any overtime compensation or missed meal or rest breaks penalties.  Further, store managers would be subject to discipline if they exceeded the labor budget.  The Plaintiff alleged that when employees attempted to input overtime hours or a missed meal break, the employer would require the employees manually adjust their time records to falsely indicate that they had taken a meal break or falsely indicate that they had stopped working earlier than the time they truly stopped working.   If the employee refused, the manager would make the adjustments themselves.  The court denied the motion for class certification based on a lack of commonality and typicality.  The court held that "it is insufficient for class certification for the claims of the individual class members to raise common questions; rather, it must be shown that a class-wide proceeding could generate common answers."  *Id.* citing *Walmart v. Dukes* (2011) 131 S.Ct. 2541, 2551. The court held that because Plaintiff's claim was not based on a written policy of the company, but rather an informal process orally implemented by managers, it was not appropriate for class certification. "For class treatment to be appropriate, Plaintiff would either have to show that these oral conversations were standardized . . . pursuant to some written policy or that some common method of proof could establish that this conduct occurred.   Otherwise, an individualized inquiry would be required to determine what each manager said to each employee on each occasion."   *Id.*   "If a claim is based substantially on oral rather than written communications, then Rule 23(a)(3) is not satisfied and treatment as a class action is inappropriate as a matter of law."  *Id.* at 6 citing *Lanzarone v. Gaurdsmark Holdings, Inc.* No. CV-06-1136, 2006 WL 4393465 at 7 (C.D. Cal. Sept. 7, 2006).

In the case at hand, the offending conduct was supposedly from Jose Cortez.  However, these communications would have been individual and were not based on a standardized policy of USS.  It is impossible to know if Cortez, without an individualized inquiry, if he "pressured" some drivers, but not others and to what extent.  It is impossible to know if the drivers acted differently because of the alleged pressure.  It is a fact that at least some meal breaks were taken by drivers.  (Declaration of Mark Bartholomew ¶ 4-7.) Were those employees not pressured or

SBISHOP\1128051.1
I10413-20864004

did they ignore the pressure?  Plaintiff alleges that he was pressured by his supervisor to work through missed breaks.  However, this instruction by Cortez, if true, was not standardized pursuant to company policy.  Plaintiff does not have any document directly showing that he and all other class members received these instructions from Cortez either orally or in writing. "Allegations based primarily on individual, oral communications are not proper for class treatment.  It is insufficient to say that other employee received similar oral instructions or to refer to these conversations as constituting a 'uniform policy.'  Absent class-wide proof of uniformity, each conversation would be subject to separate proof." *Cortez v. Best Buy Stores, LP* (2012) WL 255345 (C.D. Cal.) at 6.

Plaintiff will likely assert that common proof can be proved by examining each and every route sheet and accompanying daily service sheet.  However, doing so would not be an accurate representation of meal breaks missed due to Cortez's alleged pressure.  There are a number of legitimate reasons why an employee may choose to forego a meal break that would not impose meal break premium liability on USS.  Determining the reason for missing each and every meal break would require that each employee be deposed, making class certification inappropriate.

USS does not dispute that when comparing route sheets of some San Jose drivers to the daily service sheets, certain employees falsified records.  In those situations, either the employees did not take meal breaks at the time they indicated on their route sheets or they did not properly state their times at different customer locations.  However, this does not make for a proper class as the proof will require an individual analysis.  Further, there are substantial records showing that in fact, the route sheets match the information on the service sheets, providing undisputable evidence that meal breaks were taken.  Thus, many drivers did not succumb to the "pressure" of Jose Cortez.  There are other records showing clear falsification of records.  It is now for USS to depose each and every driver to determine if the records were falsified, how they were falsified and why they were falsified.

    4.   <u>Plaintiff Can Fairly And Adequately Protect The Interests Of The Class.</u>

For purposes of this opposition, USS does not dispute that Plaintiff can fairly and adequately protect the interests of the class.

SBISHOP\1128051.1
110413-20864004

B.   THE REQUIREMENTS OF RULE 23(B)(3) HAVE NOT BEEN MET

In addition to the requirements of Rule 23(A), a party seeking certification must also show that it satisfies one of the three provisions of Rule 23(b). *Valentino*, *supra*, 97 F.3d at 1233. Plaintiff asserts that he satisfies Rule 23(b)(3). A class may be certified under Rule 23(b)(3) where questions of law or fact common to members of the class predominate and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. In order to establish class certification pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiff must show that "the questions of law or fact common to class members predominate over any question affecting only individual members."

In his initial motion, Plaintiff asserted two arguments as to missed meal breaks. First, Plaintiff asserted that certain excerpts from USS's Associate Handbook effectively required employees to work through meal breaks. The Court disagreed with Plaintiff's reading of the Associate Handbook. Second, Plaintiff asserted that regardless of the written policy, the demands of his job and route schedule make it impossible to take breaks to which he was entitled. The Court denied the claim as to all of California, but left open the possibility that the San Jose location, under the supervision of Jose Cortez, may have been subjected to a common practice that did not permit the required breaks. In his amended motion, Plaintiff focuses on an alleged "unofficial" policy in San Jose that precluded employees from taking breaks. USS disputes any such "unofficial" policy in San Jose and asserts that if Plaintiff felt pressured not to take breaks, his claim is an individual one, not one to be decided on a class-wide basis.

1.   Individual Issues Still Predominate Over Plaintiff's Claims.

"Predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' a standard 'far more demanding' than the commonality requirement for Rule 23(a)." *Amchem Prods, Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997). Here, USS has a written meal break policy that conforms to California law. Plaintiff asserts that despite this written meal policy, Cortez effectively implemented an official unwritten policy to work through breaks. Plaintiff's claim, as it relates to class certification must fail because individual issues predominate over common issues.

CASE NO. CV 12-00318 LHK                    -7-

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

SBISHOP\1128051.1
H0413-20864004

1     "To determine whether common issues predominate, this Court must first examine the

2     substantive issues raised by Plaintiffs and second inquire into the proof relevant to each issue."

3     *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006). Whether or not USS's

4     drivers were provided the opportunity to take meal breaks according to California law is a fact-

5     intensive inquiry requiring an analysis of whether each person was permitted to, but chose not to,

6     take breaks.  As the evidence shows, determining liability on each claim will depend on the

7     individual circumstances of each of the drivers.  Consequently, individual questions predominate

8     because "the variability goes to whether an individual class member has any claim at all."

9     *Jimenez, supra*, 238 F.R.D. at 253.

10          (a)     Since *Brinker*, Predominance Can Rarely Be Established For Meal
                    Break Claims Absent A Written Policy That Violates California
11                  Law.

12                  Prior to *Brinker*, many courts determined that missed breaks,

13    without an analysis of the reason for the missed break, was sufficient to impose a meal break

14    premium.  Since *Brinker*, courts now analyze the reason for the missed break before determining

15    if a meal break premium should be imposed.  "Proof an employer had knowledge of working

16    though meal periods will not alone subject the employer to liability for premium pay; employees

17    cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to

18    generate such liability." *Brinker* at 1040.  Many cases since *Brinker* have recognized that when

19    there are valid meal break policies in place, class certification as to meal breaks is unlikely given

20    the individualized nature of determining why breaks were missed.

21          For example, in *Tien v. Tenet Healthcare Corp.* (2012) 209 Cal. App. 4th 1077, the Court

22    upheld a denial of class certification where there was evidence that the employer "made meal

23    periods available to employees," and the evidence of the employer's liability to each employee

24    depended on numerous individual issues regarding the employee's particular situation.   The

25    court's findings that individual questions of proof predominated coincide with the common-

26    sense notion that the reasons any particular employee might not take a meal period are more

27    likely to predominate if the employer need only offer meal periods, but need not ensure

28    employees their meals. Thus, the trial court did not abuse its discretion in denying certification of

Defendant's Opposition To Amended Motion For Class Certification

SBISHOP\1128051.1
10413-20864004

the missed-meal-period class. *Tien v. Tenet Healthcare Corp.*, 209 Cal. App. 4th 1077, 1088, (2012), review filed (Nov. 14, 2012). (See also, *Morales v. Stevco, Inc.* 2012 WL 1790371, at 10 (E.D. Cal. May 16, 2012) "Notably, given the recent ruling of the California Supreme Court in [Brinker], class certification for Plaintiffs' claims regarding missed meal breaks would be more difficult.")

        (b)    Evidence Of A Class-Wide Undermining Of A Formal Policy Of Providing Meal Breaks Is Required Before A Class Can Be Certified.

Here, USS has a valid written policy that applies to all putative class members. However, Plaintiff asserts that in San Jose, former supervisor Jose Cortez took away any real opportunity to take meal breaks. *Brinker* made it clear that an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks. *Brinker v. Superior Court* (2012) 53 Cal.4th 1004, 1040. "The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks." *Id.*

However, *Brinker* did not address how predominance could be established in such class action situations. Since *Brinker*, no case has dealt directly with what it meant by impeding or discouraging employees from taking meal breaks on a class-wide basis. *Brinker* itself referenced three cases in which Courts found that actions on the part of the employers undermined formal policies of providing meal breaks. All three cases, *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, *Jaimez v. DAIOHS USA, Inc.* (2010) 181 Cal.App.4th 1286, and *Dilts v. Penske Logistics, LLC* (S.D. Cal. 2010) 267 F.R.F. 625, 638, are so factually distinct that they cannot be instructive in the case at hand.

First, *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, did not involve a class claim. Second, *Jaimez v. DAIOHS USA, Inc.* (2010) 181 Cal.App.4th 1286, although it involved a class action, the court found predominance only when it was undisputed that the employer required employees to sign a manifest that they took a meal break in order to receive a paycheck even if a meal break was not taken. In the case at hand, there is no such undisputed

SBISHOP\1128051.1
I10413-20864004

overriding practice that can be attributed to meal breaks. Third, in *Dilts v. Penske Logistics, LLC* (S.D. Cal. 2010) 267 F.R.D. 625,   there was overwhelming evidence of impeding and discouraging breaks with respect to installers assigned to deliver and install appliances.   The impediments included, but were not limited to, strict deadlines for completing each installation; policies that no breaks could be taken until all installations were completed, no mechanisms to document missed breaks; unrealistic delivery schedules; and a common practice of "ridiculing, criticizing and/or reprimanding employees who returned to the yard with uninstalled appliances in a given workday." *Dilts v. Penske Logistics, LLC* (S.D. Cal. 2010) 267 F.R.F. 625, 636. Even if we accept all of Plaintiff's allegations as true, they would not rise to the level of intimidation and discouragement as in *Dilts*.

Since *Brinker*, courts have routinely denied motions for class certification absent extenuating circumstances.  Although he does not explain uniform statements made to drivers or uniform processes directed at each and every driver, Plaintiff has essentially alleged that Cortez put so much pressure on drivers to complete routes that they felt they could not take breaks. However, job pressures and tight schedules are not enough eliminate an opportunity to take a meal break.

For example, in *Gonzalez v. OfficeMax North America* (2012) WL 5473764, the court denied a motion for class certification based on missed meal breaks.  The court found that understaffing and a "customer first" policy did not provide a common method of proof of class wide violations.  "Common issues will predominate if the employees can show, by common methods of proof, that OfficeMax's policies forced [them] to forego their meal periods on a class wide basis." *Id.*  Where the evidence does not show, on a class wide basis, whether members of the proposed class missed breaks as a result of a supervisor's coercion or the employees' uncoerced choice to waive such breaks and continue working, individual issues regarding the reasons for the missed breaks predominate and class certification is inappropriate.  (See also *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 at 15 (C.D.Cal. 2012).  The court denied class certification where claims of missed breaks rested on allegations that employees were overworked and did not have time for breaks.)

Defendant's Opposition To Amended Motion For Class Certification

SBISHOP\1128051.1
110413-20864004

1    Likewise, in *Sultan v. Medtronic, Inc.* (2012) WL 3042212, the court denied plaintiff's

2    motion for class certification as to meal breaks because the class lacked commonality and

3    individual issues predominated.  In *Sultan*, the employer had a facially valid meal break policy.

4    However, within the policy, the employer stated that an employee may skip a meal break when

5    "work realities require that [the employee] not be absent from work during a meal break."

6    Plaintiff argued that as a result of the policy, if a meal break was missed, it was **necessarily**

7    missed due to "work realities" thereby establishing commonality.  The Court rejected plaintiff's

8    claim.  Instead, the Court found that a trier of fact would need to determine in each instance [of a

9    missed break] whether the requisite opportunity was provided.  The finder of fact will also have

10   to determine in each instance why the meal period was missed.  "The reasons the employees fail

11   to take breaks can be manifold:  the employees could have forgotten, wanted to finish

12   assignments, were not hungry, did not want to leave the premises, wanted to leave early, or

13   possibly, were manipulating their timecards."  *Id.*  Like in *Sultan*, Plaintiff Villa cannot establish

14   a source of common proof or common testimony on the question of why breaks were not taken.

15   Without this, certification is improper.

16
17                         (c)      It Is Not Enough To Allege That Employees Felt Pressure To
                                    Work Through Meal Breaks.

18                 Plaintiff asserts that Jose Cortez implemented an unwritten policy

19   that meal breaks were not to be taken because of the demands of the company.  In reality, USS

20   had no widespread policy, even in San Jose, of denying an opportunity for meal breaks.

21                         (i)      Jose Cortez's Statement Is Not Believable.

22                 Jose Cortez is a disgruntled former manager who filed a

23   lawsuit against USS and his supervisor after he was terminated.[2]  In his lawsuit he alleges that he

24   was improperly classified as a management employee and is entitled to unpaid overtime.  The

25   matter is still pending.  (Judicial Notice of Complaint, Santa Clara County Case No.: 1-11-CV-

26   _____
27   [2] In addition to the lawsuit, Cortez admitted that after he was terminated, he called USS,
     pretending to be a large USS customer who wanted to cancel its contract with USS.  He admits
     he was upset and mad at USS, which is why he tried to cause financial damage to USS.  (Cortez
28   Depo. p. 157:16-158:10.)

CASE NO.  CV 12-00318 LHK                     -11-
DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

207540.) Mr. Cortez had his deposition taken for the above-referenced case and reported that he knowingly asked certain (not all) employees in San Jose to alter or falsify time cards. However, he also admitted in that deposition that he never told his employees they could not take breaks. "I told them it was their right to take it if they wanted to – I couldn't – that's one thing I would never tell you you couldn't, you couldn't take your break or lunch." (Deposition of Jose Cortez p. 57:18-21 attached to Declaration of Susan E. Bishop.) He also admitted that he never disciplined or terminated anyone who chose to take a break. (Deposition of Jose Cortez 57:22-24.) He never told anyone not to take a break (Deposition of Jose Cortez 57:25-58:2) and he told them their rights. (Deposition of Jose Cortez 57:7-12.) In direct contradiction to his deposition testimony, Cortez now says he intentionally prohibited meal breaks.

(ii)     Cortez's Amended Declaration Is Not Enough to Show a Uniform Policy.

Conveniently, Cortez now claims that he knowingly created an environment that would not allow for meal breaks. Cortez's declaration mimic's Plaintiff's argument in his first Motion for Class Certification in which he asserts drivers were not allowed to leave their vehicles, be away from their phones or otherwise have an opportunity to take a meal break. The Court rejected the argument based on the lack of uniform policy. Even with Cortez's declaration, a uniform policy still cannot be established. There is simply no evidence that Cortez applied so much pressure on his drivers to establish that each and every driver did not have opportunities to take meal breaks. There is evidence, however, of the contrary. USS must look to the route sheets and daily service sheets of the drivers.

(iii)     Route Sheets Show That Drivers Did In Fact Take Meal Breaks.

Each day a driver is required to fill out a route sheet and daily activity report. Among other things, the route sheet indicates times for meal breaks. The daily activity report shows each stop made throughout the day and the times at each location. A random review of route sheets and daily activity reports show that at least some drivers did take meal breaks on a regular basis.

SBISHOP\1128051.1
i10413-20864004

For example, on December 29, 2010, San Jose driver Jose Flores indicated on his route sheet that he took a lunch from 11:50 a.m. to 12:20 p.m.   A review of his daily service sheets show that he was not at any customer site from 11:37 a.m. to 12:20 p.m. (Clearly, he had to drive from one site to another in that time, but Google.com maps shows the distance between the two locations was 2.4 miles, taking 8 minutes. If 8 minutes is assumed, the driver still had 35 minutes off.) (See attached Exhibit A and B to Declaration of Mark Bartholomew.)

That same day, San Jose driver William Jeffrey ("Bill") completed a route sheet in which he indicated that he took a meal break from 10:30 a.m. to 11:00 a.m. A review of his daily service sheets show that he was not at any customer site from 10:27 a.m. to 11:08 a.m. (Google.com maps shows the distance between the two locations was 2.3 miles, taking 8 minutes. If 8 minutes is assumed, the driver still had 33 minutes off.) (See attached Exhibit C and D to Declaration of Mark Bartholomew.)

That same day, San Jose driver Rudolfo Calderon completed a route sheet in which he indicated that he took a meal break from noon to 12:30 p.m. A review of his daily service sheets show that he was not at any customer site from 11:50 a.m. to 12:45 p.m. (Google.com maps shows the distance between the two locations was 4.8 miles, taking 11 minutes. If 11 minutes is assumed, the driver still had 44 minutes off.) (See attached Exhibit E and F to Declaration of Mark Bartholomew.)[3]

That same day, San Jose driver Ricardo Ceberos, completed a route sheet on December 29, 2010 in which he indicated that he took at 30 minute meal break from 11:15 to 11:45 a.m. However, a review of his daily service sheets show that he was at a customer site starting at 11:42. Clearly, something is in error. However, a more detailed review shows that Mr. Calderon ended one job at 11:01 a.m. and did not start the next one until 11:42 a.m. Google.com maps shows that the distance between the two locations was .2 miles, taking about 2 minutes. If 2

---

[3] The documents also contradict Jose Cortez in other ways. While Cortez says that employees could not take their trucks during breaks, these records suggest otherwise. For example, on this day Mr. Flores wrote that he drove 7 miles between 11:50 and 12:45, but the distance between the two customer sites is only 4.8 miles, indicating he drove somewhere on his break.

SBISHOP\1128051.1
I10413-20864004

1   minutes is assumed, the driver still had 39 minutes off.)   (See attached Exhibit G and H to

2   Declaration of Mark Bartholomew.)[4]

3        Mark Bartholomew reviewed route sheets from about 25 employees.   While he did not

4   review each and every day, he did review a thorough sampling.   He concluded that many

5   employees conclusively took at least one 30-minute break per shift.   He also concluded that the

6   records from other employees were inconclusive because the stated meal break times conflict

7   with stated customer service times or the driver failed to indicate the time at each customer site.

8   (Declaration of Mark Bartholomew ¶ 4-7.)

9        For purposes of this opposition, USS does not dispute that Plaintiff Villa and some others

10   may not have taken each and every meal break they were entitled to take.   However, USS does

11   dispute that Jose Cortez established a uniform policy that made taking breaks impossible or

12   improbable.   The fact that so many employees did take breaks shows that if pressure was applied,

13   it was not uniform or consistent.

14

15              (iv)   Jose Cortez Inaccurately Portrays The Working Environment In San Jose.

16        Jose Cortez asserts that there was not sufficient time to take

17   meals breaks.   He even asserts wildly inaccurate claims regarding the time allocated for cleaning

18   toilets.   He asserts that drivers were to clean 10 toilets in one hour, even though it takes 15

19   minutes to clean one toilet.   (Cortez Amended Decl. ¶ 10) The facts do not support Mr. Cortez.

20   The route sheets above show that toilets take between 5 to 10 minutes to clean, many taking only

21   three or four minutes to clean. Regardless, Cortez is missing the point.   The drivers simply did

22   not have a designated return time or specific time to be at each customer location.   If a route took

23   8 hours, 10, hours or 12 hours, it made no difference to USS. Plaintiff and other drivers have

24   more flexibility in setting their schedules than most employees in any occupation.   USS drivers

25   spend most of their days driving to various locations and they typically drive alone.   In writing,

26

27   _____

[4] Again, on this day the driver wrote that he drove 2 miles between 11:01 and 11:42, but the
28   distance between the two customer sites is only .2 miles, indicating he drove somewhere on his
break.

CASE NO.  CV 12-00318 LHK         -14-

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

drivers are given schedules that included start and end times for their shift that remain constant each day. For example, for much of Plaintiff Villa's employment, his written schedule was from 5:00 a.m. to 1:30 p.m. (*See* Exh. C attached to Briscoe Decl.)[5] However, more often than not, Villa ended his shift well after 1:30 p.m. In fact, from March 2008 to July 2011, Plaintiff worked in excess of 1500 overtime hours. (Briscoe Dec. 17.) This means he worked an average of 37.5 hours of overtime per month. Given the large number of overtime, getting back at 1:30 p.m. was certainly not a priority. The reality is that drivers, including Villa, took as long as they needed to complete their routes. All drivers, including Villa, could have easily taken 30 minutes, 60 minutes, or 90 minutes of breaks each day. The goal was to complete the route, not to return within 8 hours. Plaintiff simply has no basis for asserting that he or others had no time to take breaks and Cortez's claims defy logic.

Plaintiff's exact argument was denied in *Brown v. Federal Express Corporation, supra,* 249 F.R.D. 580. In *Brown,* Plaintiff asserted that he and other drivers were denied meal and rest breaks. The Court held that because FedEx was required only to make meal and rest breaks available to drivers, Plaintiff may prevail only if he can demonstrate that FedEx's policies deprived them of those breaks. The court considered the many things, including the various facilities, individual routes, various driving locations, ebbs and flows during the workday to hold that there was no method of common proof that would establish that FedEx's policies prevented drivers from taking required breaks, regardless of their individual circumstances. *Id.* Further, the Court held that although Plaintiff asserted that FedEx's policies put pressure on drivers such that they could not take breaks, Plaintiff did not propose a means of proving their claim on a class-wide basis. The Court considered the use of employee time sheets as recorded by drivers. However, when there was a dispute about the accuracy of the records, the Court could not find them to be a sufficient means of establishing meal breaks. The Court denied the motion for certification. *Id.*

///

---

[5] Included as a part of USS's opposition to motion for class certification and conditional class.

SBISHOP\1128051.1
110413-20864004

(v)   The   Individualized   Analysis   Would   Be   Overly Burdensome.

Just   narrowing   the   class   does   not   wipe   away   the individualized analysis that will be required.  Even with respect to those under the supervision of Jose Cortez, an individualized inquiry would be required to determine whether each employee was given an opportunity to take a meal break.

An intensive two-part analysis would have to take place.

First, USS would have to review route sheet and daily activity reports for each of the 82 employees to determine whether or not a proper meal break was indicated.  The meal break would be compared to the daily activity report to see if there was an actual cease in service at the time indicated for the meal break or any other time of day.   This process alone would be burdensome given that the route sheet and daily activity report consists of from 15-20 pages for each driver, for each shift.  To the extent that the documents are still available, Defendant would potentially have to review thousands of documents for each driver for a three-year period. [6]

Second, 82 employees would have to be deposed to determine which employees assert that despite designating that they took meal breaks each day on their route and attendance sheets, they did not actually take such meal breaks.  Then each employee would have to be questioned as to why he did not take a meal break.  Was it due to Mr. Cortez' alleged pressure or their own desire to finish their shift early, or some other reason?   Liability, not merely damages, will need to be determined on an individualized basis.

In *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 at 15 (C.D. Cal. 2012), the Court rejected a similar motion for class certification because there was not a common policy or practice of interfering with the opportunity to take a meal break.  "Plaintiff has not identified any common policy or practice that interfered with adjusters' ability to take breaks other than his generic allegations that adjusters were overworked and did not have time for such breaks.  These

---

[6] Some drivers used trucks with Global Positioning Systems ("GPS") that could provide some evidence of breaks.  However, the GPS cannot provide a complete picture because not all trucks were equipped with systems, not all stops would be recorded and it still would not address why breaks were not taken.

SBISHOP\1128051.1
I10413-20864004

1   allegations are not sufficient to demonstrate affirmatively that common questions exist or will

2   predominate. Instead, the success of Plaintiff's claims will depend on individual questions, such

3   as whether a particular adjuster took the legally mandated breaks, and if breaks were missed,

4   why the adjuster failed to take them."

5       Likewise, in *Sultan v. Medtronic, Inc.* 2012 WL 3042212, as referenced above, the Court

6   denied plaintiff's motion for class certification where the written meal break policy was

7   sufficient, but Plaintiff argued that missed meal breaks were caused by "work realities" thereby

8   mandating meal break premiums. The Court found that a trier of fact will need to determine in

9   each instance whether the statutorily required opportunity for a meal break was provided.

10  Without a source of common proof or testimony on the question of why breaks were not taken,

11  the Court would not certify a class. *Id.*

12      If drivers felt pressure to miss breaks, it may have been because of Jose Cortez.

13  However, not all employees under the supervision of Mr. Cortez felt that alleged pressure. USS

14  is entitled to individually analyze each drivers' claim, making class certification inappropriate.

15              2.      A Class Action Is Not the Superior Method for Adjudicating this Claim.

16              "Last, but certainly not least, the district court must find that a class action

17  is superior to other methods of adjudication." *Valentino v. Carter-Wallace, Inc.*, *supra,* 97 F.3d

18  1227, 1234. Pursuant to Rule 23(b)(3), certification is appropriate only if the Court finds "that a

19  class action is superior to other available methods for fairly and efficiently adjudicating the

20  controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) also sets forth specific factors that the court

21  may consider when determining whether class certification is the superior option: (A) the class

22  members' interests in individually controlling the prosecution or defense of separate actions; (B)

23  the extent and nature of any litigation concerning the controversy already begun by or against

24  class members; (C) the desirability or undesirability of concentrating the litigation of the claims

25  in the particular forum; and (D) the likely difficulties in managing a class action.

26      USS will not repeat the arguments it made as to the lack of superiority of a class action in

27  its first opposition, but will address the court's concern about the manageability of a more

28  limited class.

CASE NO. CV 12-00318 LHK                          -17-

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

SBISHOP\1128051.1
110413-20864004

1   Yes, having fewer potential class members will decrease the required inquiries down

2   from as many as 492 class members down to 82 class members. However, Plaintiff cannot

3   establish that the San Jose drivers were uniformly prevented from taking full meal breaks

4   because many of the drivers did in fact take breaks. Accordingly, the inquiry cannot be limited

5   to simply how many breaks employees were required to work through. If breaks were missed,

6   *Brinker* would require individual class members to establish the reason for their missed breaks,

7   making class treatment inappropriate. *See Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586

8   (C.D. Cal. 2008) (Class treatment was not superior because of the lack of common proof for

9   evaluating the ability of drivers to take breaks as required by law).

10   Further, if in fact other drivers assert that they falsified records in the way Plaintiff asserts

11   that he falsified his time records, USS should have the right to confront and cross-examine them.

12   "In almost every setting where important decisions turn on questions of fact, due process

13   requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*,

14   397 U.S. 254, 269 (1970). Defendants have the due process "right to present a full defense on the

15   issues," so "defendants must be allowed to present any relevant rebuttal evidence they choose,

16   including evidence that there was no [liability to] one or more members of the class." *W. Elec.*

17   *Co. v. Stern*, 544 F.2d 1196, 1199 (3rd Cir. 1976) (rejecting plaintiff's suggestion that employer

18   not be allowed to defend against individual cases at trial). Defendants "ha[ve] a right to cross-

19   examine each [putative class member] to determine whether there is liability as to that specific

20   person." *Jimenez v. Domino's Pizza, Inc., supra*, 238 F.R.D. at 253. USS intends to fully assert

21   its due process rights to challenge the claims in this case as to each particular employee. The

22   resulting "mini-trials" for each individual would defeat the purpose of a class action. We would

23   have 82 mini-trials instead of one which defeats the purpose of class actions.

24   III.   CONCLUSION

25   The fact is that there is documented evidence that many drivers in San Jose took

26   uninterrupted meal breaks on a daily basis. For that reason alone, class certification as to the

27   entire San Jose location is inappropriate. In addition, for those employees who may not have

28   taken their breaks, it is impossible to determine from any common method of proof why the

CASE NO. CV 12-00318 LHK                          -18-

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION

1   breaks were not taken. Was it for their own convenience so they could get home early or was it

2   because they felt pressured from Mr. Cortez to complete their routes as soon as possible?

3   Liability for meal break premiums only applies when breaks were missed back of a lack of

4   opportunity to take the breaks. For this reason, USS respectfully requests that Plaintiff's motion

5   be denied in its entirety.

6   DATED:  JANUARY 4, 2013                    BERLINER COHEN

7                                                     BY:  ___/s/ SUSAN E. BISHOP_____

8                                                            SUSAN E. BISHOP
                                                             ATTORNEYS FOR DEFENDANT
9                                                            UNITED SITE SERVICES OF CALIFORNIA, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.  CV 12-00318 LHK                       -19-

DEFENDANT'S OPPOSITION TO AMENDED MOTION FOR CLASS CERTIFICATION